# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS BOYD, pro se,<br><br>                 Plaintiff,<br><br>v.<br><br>FALLBROOK UNION ELEMENTARY SCHOOL DISTRICT,<br><br>                 Defendant. | Case No.: 18cv1816-LAB (KSC)<br><br>**ORDER DENYING RENEWED MOTION TO PROCEED IN FORMA PAUPERIS; AND**<br><br>**ORDER OF DISMISSAL WITHOUT PREJUDICE** |

Plaintiff Dennis Boyd filed his complaint, along with a motion to proceed *in forma pauperis* ("IFP"). The Court denied that motion, explaining what was wrong with it, and giving him another opportunity to file an IFP motion. He filed a second motion, but this one has new and different problems.

**Second IFP Motion**

Boyd's first motion said Boyd was receiving a monthly pension of $1739.87, and had monthly expenses of $1325. Among other things, it said he owned a house with a reverse mortgage of $550,000. The motion pointed out that it was possible Boyd was receiving payments from that, or at least had access to money from that source.

/ / /

Boyd's new motion, without explanation, changes much of the information. It breaks down the $1739.87, saying he receives $1624 from retirement funds (pensions, etc.) plus $115.87 monthly from interest and dividends. It does not identify any investments, property, or accounts that might be the source of interest or dividends. It also says his monthly expenses were about $1000 higher than the figure he gave before. There is no explanation for the difference, such as whether his earlier statement was wrong or incomplete.

The greatest problem, however, is that he still owns the home. He has annotated his motion "in bankruptcy," but it is unclear what this means. The institution that holds his reverse mortgage might be in bankruptcy and not making payments. Or he might be in bankruptcy. But if he is, the effect of bankruptcy on his reverse mortgage is unclear. Sometimes payments are temporarily stopped during bankruptcy, and then resume. *See* Tara Twomey, *Reverse Mortgages in Bankruptcy*, Am. Bankr. Inst. J., August 2014, at 18.

It may be that there are good explanations for all these questions, but it is up to Boyd to provide them. The form Boyd used is intended to prompt a *pro se* litigant to provide information that a court would need in order to grant leave to proceed IFP status, but it cannot anticipate every possible matter that might require additional explanation. This is why question 11 (which Boyd left blank) asks for "any other information that will help explain why you cannot pay the costs of these proceedings." Boyd is in the best position to know whether he is receiving payments now or can expect to receive them, or whether he has access to money by means of the reverse mortgage. It is up to him to explain this in his motion. The important question he must answer is whether he is receiving money, or is eligible to receive money, in connection with the reverse mortgage, and if so, how much. If he is not receiving and cannot receive any money as a result of either the institution's or his own bankruptcy, he should say so. Allowing Boyd to litigate his claims at public expense would be inappropriate if he has $550,000 at his disposal.

**Screening of Complaint**

Assuming Boyd is given permission to proceed IFP, the Court will be required to screen his complaint, and to dismiss it to the extent it fails to state a claim. 28 U.S.C. §§ 1915(e)(2); 1915A; *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (holding that district courts must screen all IFP plaintiffs' complaints, not just prisoners'). The Court is also authorized to deny IFP if the complaint would be subject to dismissal after screening. *See Minetti v. Port of Seattle*, 152 F.3d 1113, 1115 (9th Cir. 1998).

The Court construes pro se pleadings in civil rights cases liberally, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987), but will not supply facts a plaintiff has not pleaded. *Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982). The pleading standard is governed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This standard doesn't allow a plaintiff to plead mere "labels and conclusions;" rather, he must allege facts sufficient to raise his "right to relief above the speculative level." *Twombly* at 555. The pleaded facts must show his claim is plausible, not merely possible. *Iqbal* at 678.

Boyd does not plead many facts in his complaint, but instead attaches a letter dated March 27, 2017 that he apparently submitted to the EEOC. The letter mentions facts plausibly suggesting he either is disabled or was regarded as having a disability. It discussed a class he attended in October of 2016 to become a school bus driver. When he injured himself in an unrelated accident, he missed a day of class about three days before the class was scheduled to end. At that time he was also invited to apply to become a bus monitor, and attended some classes for that. He also mentions confusing instructions he was given about job requirements for the bus monitor position, and expensive certifications that he says made pursuing that job not worthwhile.

///

Boyd apparently wasn't hired for either job, which he attributes to discrimination based on disability or age. He doesn't say whether he finished the bus monitor training, or whether he is suing over failure to hire him for that position. But apparently he found the qualification process too onerous, and he wanted to be reconsidered for the bus driver position instead. His claim concerns failure to hire him for that.

Although it isn't perfectly clear, it seems Boyd believes the supervisor developed a disliking to him during the bus driver training, perhaps suspecting that he could not perform as a bus driver because he had difficulty speaking. He seems to be claiming that when he was injured and had to miss a day of class, the supervisor seized this opportunity to encourage him to drop out of that class and try for a different position that ultimately he did not want to pursue. He seems to be arguing that this amounted to denying him the bus driver position.

A federal employment discrimination claim based on disability requires a showing that the plaintiff is disabled, was qualified for the position, and suffered an adverse employment action because of his disability. *See Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). A claim for age discrimination in employment under the ADEA is similar, but requires a showing that the plaintiff was over 40, and that the job was given to a substantially younger person. *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012).

Although a prima facie case is not the same as the pleading standard under Fed. R. Civ. P. 8, the Court can and does look to the elements of a claim to determine whether a plausible claim has been pled. *See Lambdin v. Marriott Resorts Hospitality Corp.*, 2015 WL 263569 at *2 n.1 (D. Haw. Jan. 21, 2015).

Boyd has failed to allege facts plausibly showing he either was qualified for the position of bus driver, or that he suffered an adverse employment action. His failure to complete the required class or follow-on driver training for the position was apparently attributable to an injury that was not Defendant's fault, and to

Boyd's own decision to try to qualify as a bus monitor instead. Boyd never alleges he tried to take the class again or that Defendant prevented him from doing so.

Although Boyd alleges that he showed up for class every day until his injury, and performed well on one test, his allegations do not show he was performing at a satisfactory level. In fact, the allegations suggest that missing one day of the two-week class was considered a serious problem. Furthermore, because of his withdrawal he did not finish the class and did not train to drive a bus. The facts do not plausibly suggest that someone who failed to complete classroom or driver training would be qualified as a bus driver. Nor do they plausibly suggest that asking Boyd if he would rather train for another position amounted to an adverse employment action. And although Defendant did not hire Boyd as a bus driver, that apparently came after he abandoned his training and decided to pursue the bus monitor position instead. *See, e.g., King v. City & Cty of San Francisco*, 2012 WL 3877673 at *5 (N.D. Cal., Sept. 6, 2012) (plaintiff's voluntary decision to retire was not forced on him and was not an adverse employment action).

If Boyd is claiming that the supervisor knew in advance that he either could not be a bus monitor or would not want to be one, the allegations do not show this. Nor does Boyd appear to be basing any claim on Defendant's failure to hire him as a bus monitor.

For these reasons, Boyd's complaint fails to state a claim and must be dismissed. IFP is being denied for that reason as well.

**Previous Motion to Dismiss**

Defendant filed a motion to dismiss the complaint with prejudice under Fed. R. Civ. P. 12(b)(1) and (6). (Docket no. 3.) Its 12(b)(6) argument claimed that the complaint's factual allegations are wrong, and that Boyd cannot correct them by amendment. Defendant sought dismissal under 12(b)(1) on an Eleventh Amendment immunity theory. The Court denied this as premature. (Docket no. 6.)

///

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true facts alleged in the complaint. *Twombly*, 550 U.S. at 572. A claim that the complaint lacks evidentiary support is properly the subject for a motion for summary judgment. And although the Defendant argued dismissal was proper under rule 12(b)(1) because its Eleventh Amendment immunity deprived the Court of jurisdiction, it is not yet clear that Boyd could not obtain relief of some kind.

Nevertheless, before amending, Boyd should review the motion to dismiss, and consider the arguments and facts it discusses. His failure to correct problems that the motion points out would suggest that he cannot do so.

**Conclusion and Order**

Boyd's renewed IFP motion is **DENIED**. By **January 22, 2019**, he may either pay the filing fee, or else file a renewed IFP motion that corrects the problems this order and the previous order have identified. Among other things, his renewed motion <u>must</u> explain:

1. How it is he is receiving dividends or interest but owns no investments;

2. Why his new statement of monthly expenses is about $1000 higher than the one his included in his earlier motion;

3. Whether he is receiving payments or has access to any money as a result of his reverse mortgage, and if so, how much;

4. Whether he expects money to become available as a result of his reverse mortgage, and if so when; and

5. Whether he is in bankruptcy.

**If Boyd does not do either of these things within the time permitted, this action may be dismissed without prejudice. Because Boyd's errors have been pointed out to him and he has had two opportunities to correct them, he should not expect that he will be given any more chances.**

For reasons discussed above, the complaint is **DISMISSED WITHOUT PREJUDICE**. If Boyd either pays the filing fee or files a renewed IFP motion, he

must also file an amended complaint by **February 4, 2019**, that corrects the problems this order has identified. **If Boyd does not amend within the time permitted, this action will be dismissed for failure to prosecute**.

For purposes of this order, filing means the motion or amended complaint must be actually received and docketed by the Court by the end of the business day of the days they are due. Mailing or postmarking them by those dates is not enough. Boyd must meet <u>both</u> the January 22 and the February 4 deadline in this order. If he does not, this action may be dismissed without leave to amend.

**IT IS SO ORDERED**.

Dated: January 11, 2019

*Larry A. Burns*
Hon. Larry Alan Burns
United States District Judge